Rich, Judge,
delivered the opinion of the court:
This is an appeal from the Patent Office Board of Appeals affirming the examiner’s rejection of claim 18 and reversing the examiner’s rejection of claim 15 of the application of John G. Doran, serial No. 142,993, filed February 8, 1953, for an improvement in “Display and Decorators’ Pole.”
The Board rejected claim 15 on new grounds under the provisions of rule 196 (b) but appellant has withdrawn his appeal from the rejection of claim 15 leaving only claim 13, reading as follows:
13. A support comprising a removable pole adapted to extend between a relatively fixed base and cap, having a plurality of thin walled tubular sections arranged end to end and separately secured together by telescoping the end of a section within the end of an adjacent section, to form a continuous pole, and a spring biased retractable member forming the top end of the top section, the tubular sections being of substantially uniform diameter, except for the entering end, portions of the sections which are of a reduced diameter to fit within the encompassing end of an adjacent section, said entering end portion of each of said sections being formed at its inner end with a circumferential groove in its outer wall and each groove defining an outwardly facing circumferential shoulder which is inclined rearwardly and outwardly and seats the terminal portion of the encompassing end of an adjacent section. [Emphasis ours.]
The subject matter of claim 13 is a tubular, sectional, thin-walled pole, to be used in setting up displays or decorations, the lower end of each section telescoping over the upper end of each successive, lower section somewhat like a fishpole assembly. The topmost section carries a spring biased, retractable member. The entering end of each section is of reduced diameter and formed with a circumferential groove in its outer wall defining an outwardly facing circumferential shoulder upon which rests the lower extremity of the encompassing end of the adjacent tube section. To produce a maximum number of possible lengths there is added to the basic sections of the pole a series *789 of smaller tubular sections, the first being one half the length of the basic section, and each succeeding section being one half the length of the preceding section. The shortest length is shorter than the effective retractability of the spring biased section so any desired length of pole may be assembled.
The references relied upon are:
Baird, 396,321, January 16,1889.
Bliault (British), 242,651, November 12,1925.
Caudrelier (British), 119,541, October 7,1918.
Claim 13 was rejected as unpatentable over Bliault in view of Baird. The Caudrelier reference was used by the Board only in its rejection of claim 15, and thus we need not consider it.
Bliault discloses a telescopic tubular pole comprising inner and outer tubular sections, adjustable with respect to each other and secured in adjusted position by means of holes and a pin to be inserted there-through. The topmost section has a spring biased retractable member which has a cap and end plate which engages a surface when the pole is in use.
The Baird reference is essentially a sectional jack to be used to support heavy blocks of metal or the like while being worked on in a shop. The device consists of a plurality of thick-walled tubular sections of varying lengths. Each section has a base in which is a socket into which the upper end of the preceding section is fitted. The upper end of each section has a hub of reduced diameter forming a right angle shoulder upon which rests the base of the subsequent section. The topmost section carries a retractable screw member.
The Board approved the examiner’s position with respect to claim 13 which it stated as follows:
* * * that no surprising or unexpected result would be obtained in substituting a plurality of bub and socket grooves like that of Baird for the pin and hole adjusting means of Bliault. Although admitting that a groove placed at the juncture of the reduced and enlarged portions of the section is novel, he considers that such grooves have no function in the completed article and hence the shoulders of Baird are the full equivalent thereof. He regards the groove as merely incident to the method of forming a shoulder with increased inclination which could be filled in once the shoulder is formed.
Appellant’s brief, which, is commendably short and to the point,, clearly presents the issue. Thin-walled tubing sections having portions at one end of reduced diameter to permit joining of sections in fishpole fashion must be drawn or swaged to reduce the diameter and cannot have clean right-angle shoulders cut on them. Since these poles are to be repeatedly assembled and disassembled, it is as important that they shall come apart as easily as they go together. It is clear to us that if a tube which has its end portion merely reduced by swaging. *790 to the internal diameter of a like tube is inserted in the latter, the joint will probably bind because the edge of the outer section will encounter a section of gradually increasing diameter at the junction of the reduced end portion with the main body of the tube. This is because, as the brief states, “it is not possible to form a sharp shoulder by the swaging method. The gradual slope tends to exert a wedging action.” It is equally clear to us that this problem would be discovered the first time such a pole was made.
Appellant solved this problem by means of the groove recited sufra in the claim, which groove is made in forming the shoulder on which the next tubing section rests and immediately underlies the edge which would otherwise bind. Its form will be clear from this passage from the specification:
By way of example, if tlie tube is 20-gauge, tbe radius of tbe entering portion 27 is reduced .035 inch, while the radius of tbe abutting groove 29a is decreased .070 inch [elsewhere stated to be twice tbe wall thickness]. This affords an adequate seat or abutment for the end 28 which will not wedge.
The question of patentability comes down to the presence of the groove, admittedly not shown in the references, since the references show the rest of the claimed subject matter. But taking 35 U. S. C. 103 into account we hold that the groove does not impart patentability because it would be obvious to a person of ordinary skill in this art as an expedient for eliminating the problem of binding as •soon as that problem arose. The groove is the equivalent of removing metal from the point of binding and since it would not be desirable to cut it away, it was removed by locally reducing the tubing diameter to form the groove by swaging. Admitting the contentions that a problem was solved and a “decided improvement” made, we feel that if the art was advanced, as also claimed, the advance was the result of skill of the calling producing an obvious solution of a problem readily •solved. This kind of advance does not merit patent protection.
The decision of the board rejecting claim 13 is affirmed.